**2014 BNH 013 Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

                                          Bk. No. 13-11283-BAH
                                          Chapter 7

Joseph F. Iodice,
        Debtor

*Andrew D. Dunn*
*Devine, Millimet & Branch P.A.*
*Manchester, NH*
*Attorney for Haley Charest*

*Arthur O. Gormley, III*
*Gormley & Gormley, PC*
*Nashua, NH*
*Attorney for Debtor*

## MEMORANDUM OPINION

      Before the Court is creditor Haley Charest's Objection to Exemption (the "Objection"). In the Objection, Charest (the "Creditor") objects to debtor Joseph Iodice (the "Debtor") exempting as homestead property two parcels of real property under RSA 480:1. The Debtor has conceded that one of the claimed parcels is not exempt,[1] but otherwise opposes the Objection, continuing to claim as exempt the other parcel. For the reasons set forth below, the Court finds that the Debtor may properly exempt this parcel and shall overrule the Objection.

## JURISDICTION

      This Court has authority to exercise jurisdiction over the subject matter and the parties

---

[1] Accordingly, the Court will not discuss this parcel, identified in the pleadings as "Lot 24." Db. Ex. 6.

pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The facts related to this matter are straightforward and undisputed. The Debtor filed his chapter 7 petition on May 16, 2013 (the "Petition Date"). The Creditor promptly objected to the Debtor's claimed homestead exemption. Doc. 10. The parties agreed to submit a stipulated record of the facts and forgo an evidentiary hearing.[2] After the parties filed their stipulations and exhibits, the Court took the matter under advisement.

The parcels of real property still at issue are located at 399 Hurricane Hill Road in Mason, New Hampshire. The parcels are contiguous. The smaller parcel abuts Hurricane Hill Road and is approximately 3.75 acres ("Lot 17-1"). The larger parcel ("Lot 19") runs along the rear of Lot 17-1—the side furthest from and running parallel to Hurricane Hill Road—and extends well beyond it to one side. See Cr. Ex. A & Db. Ex. 6. Lot 19 is approximately 25 acres. Cr. Ex. A. The Debtor resides on Lot 17-1. It contains his house, a garage, and a barn. Lot 19 is almost totally covered in forest. The Creditor does not challenge the exemption of Lot 17-1, only the exemption of Lot 19.

The Creditor took the Debtor's deposition on December 12, 2013, asking the Debtor several questions about how he was then using Lot 19:

Q: All right. And what is that 24.8-acre lot used for today?

---

[2] The parties each submitted a separate stipulation and exhibits. See Docs. 87 and 88. The Debtor entitled one of his exhibits "Proposed Exhibit 6." What meaning "proposed" was intended to convey is not apparent to the Court, but since neither party has objected to the Court considering any of the exhibits, it will consider all the submitted exhibits as stipulated to.

2

    A:  It's just woods.

    Q:  All right.   Do you take firewood from it?

    A:  No.

    Q:  Use it for anything?

    A:  No.

    Q:  Do you use it for anything connected with your house?

    A:  No.   No.   All I need is this right here (indicating).   That's all I . . .

    Q:  By "this," you're talking about –

    A:  My original lot, yeah.

    Q:  – the 3.61-acre lot –

    A:  Hmm-hmm.

    Q:  – Lot 17-1.

    A:  Right.

The Debtor supplemented these statements with an affidavit submitted as Debtor's Exhibit 6 in this proceeding.   In this affidavit, the Debtor states that about three years prior to the Petition Date[3] he was using the part of Lot 19 that abuts Lot 17-1 as a pasture for horses and to cut down trees for firewood.   To this end, the Debtor had cleared a small 200' by 200' strip of land and fenced it off.   The actual fence and cleared area were on Lot 17-1, but it is clear that the horses were pastured on Lot 19 as well.   Candidly, the Debtor indicated that he no longer owns horses, but that his live-in girlfriend does own a horse.

---

[3] The affidavit was executed on April 1, 2014.   The Debtor describes how he used Lot 19 "approximately 4 years ago" in the affidavit.   For the sake of clarity, the Court refers to this period of time as three years before the Petition Date, which was in May 2013.

**DISCUSSION**

In New Hampshire, "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:1. The Debtor has claimed that both Lots 17-1 and 19 constitute his homestead. Bankruptcy Rule 4003(c) places the burden of proof on the Creditor to establish that the claimed exemption is improper. Under New Hampshire law, "the homestead claimed by the [d]ebtors was created by the New Hampshire legislature as a matter of public policy and is to be construed liberally." In re Myers, 323 B.R. 11, 13 (Bankr. D.N.H. 2005) (citing Currier v. Woodward, 62 N.H. 63, 66 (1882)). In order to properly claim the homestead exemption, the claimed property must satisfy the relevant state law requirements as of the date of the bankruptcy petition. In re Evarts, 2006 BNH 024 at 4.

The New Hampshire Supreme Court has unwaveringly explained the characteristics of the homestead exemption. "'Homestead' means home place, or place of the home." Austin v. Stanley, 46 N.H. 51, 52 (1865). "The statute was specifically intended to secure to debtors and their families, the shelter of the homestead roof; not to exempt mere investments in real estate, or the rents and profits derived therefrom." Id. In defining the homestead right, the Supreme Court has focused on the concept of occupancy:

> Occupancy is essential to the existence of the homestead right, and for the purpose of its creation or inception the occupancy must be actual; but when the premises have become invested with the homestead character, and a homestead has been once acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment.

Currier, 62 N.H. at 65.

4

In In re Haseltine, 2007 BNH 037, this Court held that two parcels of land could be properly claimed as exempt. In Haseltine, the debtors had constructed a barn on a parcel of property that was contiguous with a separate parcel, where their house was located. The parcel with the barn was part of the homestead because it was "actually and conveniently used by the Debtors" in connection with the parcel containing the house. Id. at 6. Haseltine is consistent with decisions of the New Hampshire Supreme Court that support allowing a debtor to exempt multiple parcels. See Libbey v. Davis, 68 N.H. 355 (1895) (two brothers lived on one parcel of land and were able to claim as exempt a separate contiguous parcel, which they farmed); Rogers v. Ashland Sav. Bank, 63 N.H. 428 (1885) (contiguous second parcel used only as a garden was properly exempted); Nichols v. Nichols, 62 N.H. 621 (1883) (husband and wife lived on one parcel and used a second adjacent parcel as a farm; second parcel was properly exempted).

The Supreme Court has not permitted property to be claimed as exempt where it was not actually used as the homestead. In Currier v. Woodward, the debtor never lived on the property that he attempted to exempt. Instead, it was occupied by tenants. Currier at 65. See also Cole v. Laconia Sav. Bank, 59 N.H. 53 (1879) (debtor did not show occupation, use, or intention where there was never any dwelling on the land and he resided about three miles away).

Here, it is undisputed that three years prior to the Petition Date, the Debtor was actively using Lot 19 as part of his homestead in pasturing horses there and gathering firewood. It is also undisputed that in December of 2013 the Debtor was not using Lot 19 for any purpose. It is unclear from the record exactly when the Debtor stopped using Lot 19—just that after the Petition Date he was not using it. When the Debtor used Lot 19 in connection with Lot 17-1, he

5

established it as part of the homestead because he "actually and conveniently" used Lot 19 "in connection with" Lot 17-1, the Debtor's undisputed homestead. Libbey v. Davis at 355.

At best, the Creditor has established that the Debtor temporarily stopped using Lot 19. However, a temporary absence from property that has been used as a homestead is not enough to change the homestead character of that property—absence must be coupled with an intent to abandon. Currier, 62 N.H. at 65. The Creditor has not produced sufficient evidence of such an intent. Given the liberal construction of the homestead exemption and that the burden of proof is on the Creditor, the lack of evidence of intent to abandon is fatal to the Objection.

The Court does not find it necessary to consider whether an easement exists from Hurricane Hill Road, across Lot 17-1 to Lot 19. Even if such an easement existed, it would not change the analysis that the Debtor has established Lot 19 as part of his homestead and that the Creditor has not put forth sufficient evidence that the Debtor intended to abandon it.

Additionally, the Court does not find the evidence of value of Lots 17-1 and 19 germane in deciding whether the Debtor may claim the homestead exemption in both Lots. The Debtor is entitled to a $100,000 exemption in whatever property constitutes the homestead. Here the Court has determined that both Lots 17-1 and 19 are the Debtor's homestead. Any value in excess of $100,000 would not be exempt, but that potentiality has no bearing on the legal character of the property as homestead property.

**CONCLUSION**

The Court shall overrule the objection for the reasons stated. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date: September 30, 2014          /s/ Bruce A. Harwood
                                  Bruce A. Harwood
                                  Chief Bankruptcy Judge